**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

Triumf Hyseni on behalf of himself
and others similarly situated,

               Plaintiffs,

      v.

Zia Maria Little Italy Inc., Iyad Khaled
Hamsho,

             Defendants,
_____

**COMPLAINT**
**FLSA COLLECTIVE ACTION**
**AND RULE 23 CLASS ACTION**

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and others similarly situated, by and through their undersigned attorneys, respectfully allege as follows:

### JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

2. This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

### STATUTE OF LIMITATIONS

4. Claimant seeks damages under the FLSA for three (3) years, with a tolling of the statute of limitations for 8 months starting on or about March 16, 2020, to on or about November 3,

2020 based on the Governor of New York's Executive Order 202.8 as subsequent reissued and extended by other Executive Orders tolling the statute of limitation.

5.  Plaintiff seeks damages under the NYLL for a period of six (6) years, with a tolling of the statute of limitation for 8 months starting on or about March 16, 2020 to on or about November 3, 2020 based on Executive Order 202.8 and as subsequent reissued and extended by other Executive Orders tolling the statute of limitations.

## THE PARTIES

### Plaintiff

6.  Plaintiff Triumf Hyseni ("Hyseni") worked as a server since approximately September 15, 2019, until he was fired in retaliation for complaining about his wages on June 18, 2021.

### Defendants

7.  Defendant, Iyad Khaled Hamsho ("Hamsho") is the principal and managing owner of the Zia Maria restaurant ("Zia Maria").

8.  Defendant, Zia Maria Little Italy Inc ("Zia Maria Inc.") is a New York domestic corporation which operates a restaurant called Zia Maria Little Italy at 138 Mulberry St., New York, NY 10013.

9.  Defendants have gross annual sales in excess of $500,000.

10. Defendant, Iyad Hamsho owns the restaurant and operates the restaurant.

11. As managing owner of Defendant Restaurant, Defendant Hamsho was actively involved in all aspects of Defendants' Restaurant business.

12. Defendant Hamsho had operational control over staffing decisions in Defendant Restaurant and ultimate authority over Defendant Restaurant's employees' rates of pay, scheduling, hiring and firing, and maintenance of employment records.

13. Hamsho would oversee the staff and frequently interacted with staff.

14. Defendant Hamsho would give them work schedules and work assignments like sections of the restaurant to work.

15. Hamsho made the decision to include the General Manager in the tip pool.

16. When the staff complained about their assignments or the tip pool, they complained to Hamsho directly.

17. Hamsho frequently disciplined the staff and directed their work.

18. Defendant Hamsho exercised control over payroll practices in Defendants' Restaurant.

19. Plaintiff frequently complained about the payroll practices of the Defendants.

20. In response, Defendant Hamsho would tell the Plaintiff that he was in charge, he could do whatever he wanted to do with regard to paying employees and the tip pool.

21. Defendant Hamsho was Plaintiff's employer.   At all times Hamsho acted either directly or through agents acting under his direction and for his benefit.

22. Plaintiff's paychecks were issued by Zia Maria Little Italy Inc.

23. All of the defendants acted jointly and operated the Zia Maria Little Italy restaurant which is located in the Little Italy section of Manhattan.

24. Restaurant uses the website www.ziamarialittleitaly.com as its official website.

25. During the pandemic, Defendant, Zia Maria Little Italy Inc received multiple PPP loan from the Small Business Administration.

26. On or about May 1, 2020, the website Propublic.org reports that Defendant, Inc received $51,735 from the PPP loan program and had 12 employees.  (See exhibit 1)

27. On or about February 1, 2021, the website Federalpay.org reports that defendant Zia Maria Little Italy had a payroll of $330,288 thousand dollars and received additional PPP loan of $68,805.  (See exhibit 2)

## FACTS

28. Defendants committed the following acts knowingly, intentionally, and willfully.

29. Defendants knew that the nonpayment of minimum wage, and illegal deductions from tips would economically injure Plaintiff, the FLSA Collective Plaintiffs, and members of the Class and violated federal and state laws.

30. Plaintiff, FLSA Collective Plaintiff, and Class Members often worked regular time and overtime for which they were not compensated.

31. Defendants failed to provide the Plaintiff, and Class Members with proper wage notices listing the proper wages, tips credits and other important wage information.

32. When Plaintiff's wages changed, or tip credit deductions changed, the defendants failed to update their wage notices.

33. Plaintiff's hours on his paycheck were rounded to the nearest 5-hour increment.

34. Defendants estimated the Plaintiff, Class and Collective members wages then paid them for weekly hours of 20, 25, 30, 35 or 40 hours which grossly underestimated the hours worked.

35. Defendants did not give Plaintiff and the Class Members proper notice of all the hours they worked, failed to pay the them the correct wage, failed to pay Plaintiff and other employees for the hours and minutes worked, failed to pay overtime, failed to pay the Plaintiff the

proper minimum wage, the proper overtime hours, did not properly list the tip credit wage, which is a violation of New York Labor Law ("NYLL") § 195(3) and failing to provide accurate wage Notices under New York Labor Law ("NYLL") § 195(1).

36. Defendants maintain a practice of illegally misappropriating gratuities.

37. Defendants knew that nonpayment of minimum wage/overtime, misappropriating Plaintiff's tips, and making improper deductions from Plaintiff's wages would economically injure Plaintiff and violate federal and state laws.

TIP POOL

38. Plaintiff, and similarly situated employees, did not have any control over how the tip pool was divided.

39. Defendant included in the tip pool the general manager, Toni who received a full cut of the tips.

GENERAL MANAGER'S DUTIES

40. The General Manger interviewed employees.

41. Plaintiff was interviewed by the General Manager.

42. The General Manager hired and fired employees.

43. Plaintiff was hired by the General Manager Toni.

44. The General Manager participated in the firing of the Plaintiff on June 18, 2021. See Exhibit 5 shows GM Toni on the tip out sheet.

45. The General Manager called the owner and asked to terminate the Plaintiff who was terminated.

46. The General Manager Toni fired various employees including Rashid, a waiter named Leo, a hostess named Michelle, and another man who was a host.

47. The General Manager arranged the schedule and sent employees home when things were slow.

48. The General Manager ran the pre-shift meeting.

49. The General Manager oversaw the restaurant floor.

50. The General Manager directed the Plaintiff daily, telling them what to do, where to go, which tables needed immediate attention and also handled customer complaints.

51. The General Manager introduces himself to guests and vendors as the General Manager.

52. Whenever there was a guest complaint or a problem with a guest's order, the General Manager handled that complaint.

53. The General Manager was able to comp. a guest check or a portion of a guest's check.

54. Guest of the restaurant understood that the General Manager was in charge.

55. The General Manager sometimes ordered the servers to clean the bathroom which was not their job.

56. The General Manger was the person who represented the restaurant when customers had complaints.

57. The General Manager disciplined employees, controlled work schedules, controlled income, had access to employee files and other acts of managerial responsibility.

58. The General Manager had keys to the restaurant and closed the restaurant.

59. Defendants failed to give the Plaintiff and other class members all of the tips that he earned each week.

60. Plaintiff believed that each week defendants took between $100 and $200 directly from his tips.

61. Plaintiff complained about it many times and was told by Defendant, Hamsho, that he was in charge, and he will decide how the tips are split.

62. Defendant Hamsho and Toni fired Plaintiff in retaliation for complaining about the illegal employment practices.

MINIMUM WAGE

63. Plaintiff never received his wage notices when he was hired by the Defendants.

64. Defendants never explained the wage payment to the Plaintiff.

65. Plaintiff was never told that he would be paid the tip credit wage and how his compensation would be calculated.

66. Plaintiff should have been paid minimum wage.

67. Defendants failed to pay the Plaintiff the proper tip credit wage.

68. Plaintiff was paid $9.00 an hour when the tip credit wage was $10.00 an hour.  (See exhibit 3)

69. Upon information and belief Defendants used the tip credit wage for small employers even though the restaurant employed more than 11 people.

70. In 2019 on the rare occasion that Defendants paid overtime, Defendants paid the Plaintiff the overtime wage of $13.50 which is incorrect.  (See exhibit 3)

71. Defendants failed to utilize a time clock to keep track of the employee hours worked.

72. Plaintiff and other class members complained about the systematic underpayments.

73. Plaintiff was aware that the other tipped employees were also paid in the same random and haphazard way.

74. Defendants were not allowed to pay the Plaintiff the tip credit wage because the General Manager Toni was in the tip pool and the tip pool was illegal.

UNDER PAYMENT OF HOURS.

75. Defendants failed to pay the Plaintiff the proper number of hours each week.

76. Defendants did not pay Plaintiff for all of the hours that he worked.

77. During an average week, the Plaintiff was scheduled to work 4 double shifts per week.

78. Plaintiff worked double shifts on Tuesday, Friday Saturday and Sunday.  See exhibit 4

79. Plaintiff arrived for his double shift at 11 am.

80. He worked straight through until 11 pm on Tuesday and Sunday.

81. On Friday and Saturday night he worked until 12 or 1 am.

82. Defendant worked a minimum of 50 to 52 hours per week when he was scheduled for 4 shifts.

83. Plaintiff was scheduled for 4 shifts a week from September 15, 2019, to March 15, 2020.

84. During the pandemic after restaurants opened, he has worked 3 shifts per week.

85. Plaintiff would usually be paid for 30 hours when he worked this schedule.

86. Plaintiff's paycheck only showed that he worked 20 hours, 25 hours, 30 hours, 35 hours or 40 hours.  See exhibit 3

87. It is statistically not possible for Plaintiff to have only worked in increments of 5 hours.

88. Plaintiff and other class members were treated the same.

89. Plaintiff was not paid for all of the time that he worked.

90. Plaintiff was never paid for the minutes that he worked because all of his pay checks were paid in 5-hour increments and the hours were round down.

SPREAD OF HOURS

91. Defendants failed to pay the Plaintiff for Spread of hours which is the payment of an extra hour of pay when the time from the beginning of the day to the end of day exceeds 10 hours.

92. Defendants failed to pay Spread of Hours, which is a violation of the Hospitality Wage Order §146-1.6.

93. Plaintiff was routinely scheduled to work for double shifts.

94. The shifts started at 11 am and ended at 11 pm on Tuesday and Sunday and at 12 midnight or 1 am on Saturday and Sunday.

95. Almost ever shift that the plaintiff worked the time from the start to the end of the day exceeded 10 hours.

VIOLATION OF THE 80/20

96. Plaintiff spent more than 2 hour and 20% of their time doing non-service work.

97. During the lunch shift, plaintiffs worked more than 20% of their time doing non-tip related work.

98. During the daytime shift plaintiff worked an hour before the shift started doing nonservice work.

99. Plaintiff spent from 3 pm to 5 pm doing nonservice work and then spent the last hour to hour and half at the end of the day doing nonservice work.

100. In addition, during the shift, Plaintiff was required to do nonservice work.

101. When the plaintiff worked a double shift, he spent more than 4 and half hours doing nonservice related side work.

102. Plaintiff, Class and Collective members where required to work an hour before opening, during the 3pm to 5:30 pm and after closing in the evening for an hour to an hour and half each double shift that they worked.

103. In total Plaintiff worked more than 2 hours and more than 20% of his time doing side work.

**FLSA COLLECTIVE ALLEGATIONS**

104. Plaintiffs bring Counts 1, 2, and 3 as collective actions pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by Defendants at Zia Maria Little Italy Inc.  as Server, Waiter, Busser, and Runners on or after the date that is three years before the filing of this Complaint in this case as defined herein. ("FLSA Collective Plaintiffs").

105.  At all relevant times, Plaintiff, and the members of the FLSA Collective, are and have been similarly situated, have had substantially similar job requirements, and pay provisions, and are and have been subject to Defendants' decision, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay them minimum wage, overtime for work more than forty (40) hours per workweek.  The Servers, Waiters, Runners and Bussers all participated in the mandatory tip pool. The claims of Plaintiff, stated herein, is essentially the same as those of the other FLSA Collective Plaintiffs.

106. All of the potential class members were affected equally by the Defendants policy of not paying for all of the time work, failing to calculate the correct hours and minutes that plaintiff worked, improperly rounding down the number of hours worked, failing to pay the correct minimum wage, failing to pay the correct overtime rate, failing to pay for hours worked and failing to pay overtime wages.

107. Counts 1, 2, and 3 are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

108. All employees suffered under the same common policy of Defendants of refusing to pay for hours and minutes works, refusing to pay for overtime, refusing to pay the correct minimum wage and overtime wage.

**RULE 23 CLASS ALLEGATIONS – NEW YORK**

109. Plaintiff bring the state law Claims for Relief (Counts 4, 5, 6, 7, 8, and 9) under the New York Labor Law ("NYLL") pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by Defendants, employed as Servers, Waiters, Bussers, and Runners on or after the date that is six years before the filing of this Complaint in this case as defined herein (the "Class Period").

110. All said persons, including Plaintiff, is referred to herein as the "Class."  The Class members are readily ascertainable.  The number and identity of the Class members are determinable from the records of Defendants.  The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under F.R.C.P. 23.

111. There was a common policy and practice of reducing employees' hours that exceeded (40) hours in a single week, to a lesser amount.

112. Defendants has a common practice of rounding the number of hours that tipped worker received to 20, 25, 30, 35 or 40 hour each week.

113. Defendant had a common practice of not paying overtime hours.

114. Defendant had a common practice of not paying spread of hours, even though staff were scheduled for double shifts.

115. Defendants had a common practice of including the General Manager in the tip pool which was illegal and rendered the tip pool invalid.

116. The proposed Class is so numerous that joinder of all members is impractical, and the disposition of their claims as a class will benefit the parties and the Court.  The identities of the proposed Class members are ascertainable through Defendants' payroll records.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendant, there are more than 40 potential Class members.

117. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which could be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, overtime compensation, illegal retention of tips, failure to pay spread of hours, no wage notices, and defective wage statements.

118. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

119. Plaintiff can fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

120. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate

defendants.  Class action treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecutor of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

121. Upon information and belief, Defendants violated the New York Labor Law.  Current employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

122. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including but not limited to:

a.      Whether Defendants employed Plaintiff and the Class members within the meaning of the NYLL.

b.      Whether Defendants properly compensated Plaintiff and Class members for overtime.

c.      Whether Defendants illegally retained portions of Plaintiff's and Class members' tips.

d.      Whether the potential Class members were paid the spread of hours.

e.      Whether Defendants provided Plaintiff and Class members with the proper notice and recordkeeping requirements.

f.      Whether Defendants unlawfully utilized the "tip credit" when paying Class members.

g.      Whether Plaintiff and the members of the Class are entitled to damages, liquidated damages, and if so, the method by which such damages should be calculated.

h.      Whether Defendants are liable for the attorneys' fees and costs of the members of the Class.

**CAUSES OF ACTION**

123. Defendants committed the foregoing acts against Plaintiff, the FLSA Collective Plaintiff, and the Class Members.

**COUNT 1**
**(FLSA Minimum Wage Violations, 29 U.S.C. §§ 201, *et seq.*)**
**(Brought by Plaintiff on Behalf of**
**himself and the FLSA Collective Plaintiffs Against all Defendants)**

124. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

125. Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to pay Plaintiff, and the members of the FLSA Collective, the full federal minimum wage for each hour worked.

126. At all relevant times, Defendant had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiff, and the FLSA Collective Plaintiffs, the full federal minimum wage for each hour worked.

127. Defendant paid Plaintiff in "rounded" number of 20, 25, 30, 35 and 40 hours a week.  See exhibit 3.

128. Defendant failed to pay the Plaintiff for any minutes.  See exhibit 3.

129. Defendants' records are suspicious in that:

    a.  A review of Plaintiff paychecks is suspicious because the number of hours ends in either a 0 or a 5.

    b.  It is illegal and unheard of to round hours worked to the nearest 5 hours.

    c.  Plaintiff routine worked more than 40 hours, but rarely was he ever paid for the overtime hours.

    d.  Defendant did not use a time clock.

130. Also, time was arbitrarily cut from Plaintiff's hours even when he worked 4 double shifts a week, which often exceeded 12 hours a day.

131. Defendants illegally retained tips and illegally distributed tips to the general manager.

132. Defendants are not entitled to take the tip credit because the tip pool was illegal, and the Plaintiff was not given notice of the tip credit and how he would be paid.

133. Defendant's unlawful conduct was willful within the meaning of the FLSA, 29 U.S.C. § 255(a), therefore a three-year statute of limitations applies.

134. Plaintiff, on behalf of himself and the members of the FLSA Collective, seek damages in the amount of their respective unpaid minimum wage compensation, liquidated (double) damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT 2
**(FLSA Overtime Violations, 29 U.S.C. §§ 201,** *et seq.***)**
**(Brought by Plaintiff on Behalf of**
**Himself and the FLSA Collective Plaintiffs Against all Defendants)**

135. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

136. Throughout the statute of limitations period covered by these claims, Plaintiff and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek.

137. At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiff and the FLSA Collective Plaintiffs at one and one-half times their hourly wage for work in excess of forty (40) hours per workweek and willfully failing to keep records required by the FLSA and relevant regulations even though the Plaintiff and the FLSA Collective Plaintiffs were entitled to overtime.

138. On the rare occasion when Defendants paid overtime, the Defendants used the wrong hourly rate to pay the Plaintiff and class members.  For example, Plaintiff was paid at an overtime rate of $13.50 an hour when the overtime rate was higher.  See exhibit 3.

139. When Plaintiff or class members exceeded 40 hours, they were simply not paid.

16

140. Pre-pandemic Plaintiff worked 4 double shifts each week.  Plaintiff worked doubles on Tuesday, Friday, Saturday, and Sunday.  During  the pandemic, plaintiff usually worked 3 days a week working double shifts.

141. The double shifts started at 11 am and then ended on Tuesday and Sunday at 11 pm, but on Friday and Saturday the shifted ended between 12 midnight to 1 am.

142. Plaintiff worked between 50 and 52 hours per week.  Plaintiff was not paid for the 10 to 12 hours of overtime.

143. Defendants' unlawful conduct was willful within the meaning of the FLSA, 29 U.S.C. § 255(a), therefore a three-year statute of limitations applies.

144. Plaintiff, on behalf of himself and the members of the FLSA Collective, seek damages in the amount of their respective unpaid minimum wage compensation, liquidated (double) damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT 3
### (New York Minimum Wage Violations, NYLL §§ 652 *et seq.*)
### (Brought by Plaintiff on Behalf of himself and the Class Against All Defendants)

145. Plaintiff, on behalf of himself and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

146. At all relevant times, Defendants utilized the "tip credit" when paying Servers, Bussers, and Runners.

147. Defendants' violations of NYLL § 196-d, as alleged below, renders them ineligible to utilize the "tip credit."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 290-91 (S.D.N.Y. 2011); Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007).

148. Defendants violated the tip credit law by including in the common tip pool the

General Manager who received a cut of the tips.

149. Because Defendants are not entitled to utilize the "tip credit," it was required to pay Plaintiff, and the Class, the full minimum wage.

150. As a result of Defendant's unlawful conduct, Plaintiff, and the Class, were paid wages less than minimum wage in violation of § 652 of the NYLL.

151. Defendants willfully and intentionally violated § 652 of the NYLL, and accordingly, a six-year statute of limitations is applicable.

152. As a result of Defendants' willful and intentional unlawful conduct, Plaintiff, and the Class members, are entitled to damages in an amount to be determined at trial, liquidated (double) damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, all other damages available under New York law, and such other legal and equitable relief as this Court deems just and proper.

## COUNT 5
**(New York Overtime Violations, NYLL §§ 650 *et seq.*)**
**(N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4)**
**(Brought by Plaintiff on Behalf of himself and the Class Against All Defendants)**

153. Plaintiff, on behalf of himself and the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

154. At all relevant times, Defendants knowingly failed to pay Plaintiff and the members of the Class the full New York overtime rate per hour of one and a half times their hourly wage for work in excess of forty (40) hours per workweek, failed to pay when an employee worked more than forty (40) hours a week, and willfully failing to keep records required by New York law even though the NYLL Class members have been and are entitled to overtime.

155. Plaintiff worked overtime every week but was not paid for overtime.

156. As a result of Defendants' willful and intentional unlawful conduct, Plaintiff, and the Class members, are entitled to damages in an amount to be determined at trial, liquidated (double) damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, all other damages available under New York law, and such other legal and equitable relief as this Court deems just and proper.

### COUNT 6
**(Illegal Deduction from Gratuities, NYLL §§ 193, 196-d and 198-b)**
**(Brought by Plaintiff on Behalf of himself and the Class Against all Defendants)**

157. Plaintiff, on behalf of himself and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

158. Pursuant to NYLL § 196-d, "[n]o employer or his agent or an officer or agent of any corporation, or any other person. . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

159. Defendants willfully retained and continue to retain portions of Plaintiff's and Class members' tips through Management's practice of including the General Manager in the tip pool in violation of NYLL § 196-d.

160. As a result of Defendants' unlawful conduct, Plaintiff and Class members were denied tips to which they were otherwise entitled.

161. Defendants willfully and intentionally violated § 196-d of the NYLL.

162. As a result of Defendants' willful and intentional unlawful conduct, Plaintiff and the proposed members of the Class are entitled to damages in an amount to be determined at trial, liquidated damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, all other damages

available under New York law, and such other legal and equitable relief as this Court deems just and proper.

## COUNT 7
**(Spread of Hours Violations, NYLL §§ 190 *et seq.* and 650 *et seq.*)**
**(12 NYCRR § 137-1.7 and 137-3.11; 12 NYCRR § 142-2.4; NYLL § 663 *et seq.*)**
**(Brought by Plaintiff on Behalf of himself and the Class Against All Defendants)**

163. Plaintiff, on behalf of himself and all those similarly situated, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

164. Defendants failed to pay Plaintiff and Class members one additional hour's pay at the minimum wage rate for each day the interval between the beginning and end of an employees workday exceeded 10 hours.

165. Defendants are required to pay the Plaintiff for one hour at minimum wage when his day is longer than 10 hours.  12 NYCRR § 137-1.7 and 137-3.11

166. Plaintiff have demonstrated the interval between the beginning and the end of the employee's workday exceeded 10 hours. See Exhibit 4, schedule showing plaintiff working double shift.

167. Defendants' failure to pay "spread of hours" pay was willful.

168. As a result of Defendants' unlawful conduct, Defendants are liable to Plaintiff as well as other Class members, for damages in an amount to be determined at trial.

## COUNT 8
**(New York Notice and Recordkeeping Violations, NYLL §§ 195, 198)**
**(Brought by Plaintiff on Behalf of himself and the Class Against All Defendants)**

169. Plaintiff, on behalf of himself and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

170. Defendants failed to provide Plaintiff with accurate wage statements as required by NYLL § 195(3).

171. Defendants issued wage statements containing numerous inaccuracies including wages, hourly rates, hours worked, overtime premiums, and spread of hours contrary to the requirements of NYLL § 195(3).

172. Plaintiff's and Class Member's paychecks listed the tip credit wage as "regular" wage, and the amount was $7.50.  See Exhibit 3.

173. Defendants failed to pay the correct number of spread of hours on the wage statements every time Plaintiff, and the members of the Class, worked a day where the interval between the beginning and the end of the workday was 10 hours or more.

174. Defendants' violations were willful.

175. As a result of Defendants' unlawful conduct, Defendants are liable to each Plaintiff and Class member in the amount of $5,000, pursuant to NYLL § 198 (1-d), along with costs and attorneys' fees.

### COUNT 9
**(New York Notice and Recordkeeping Violations, NYLL §§ 195, 198)**
**(Brought by Plaintiff on Behalf of himself and the Class Against All Defendants)**

176. Plaintiff, on behalf of himself and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

177.  Defendants failed to give Plaintiff, and members of the Class, a wage notice when they started pursuant to NYLL § 196(1).

178.  Defendants failed to give Plaintiff, and members of the Class, a wage notice when their wages changed pursuant to NYLL § 195(1).

179. Plaintiff and members of the Class were damaged by the failure of the Defendants to provide them with wage notices.

180. Defendants' failure to provide the wage notice was willful and intentional.

181. As a result of Defendants' unlawful conduct, Defendants are liable to Plaintiff as well as other Class members, for damages of $5,000 pursuant to NYLL § 198(1-b) or for damages in an amount to be determined at trial.

## COUNT 10
### (Retaliation under NYLL § 215)
### (Brought by Plaintiff against all the Defendants)

182. Plaintiff, on behalf of himself and the members of the Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

183. Plaintiff complained to the Defendants about the illegal wage practices at the restaurant.

184. Defendant, Hamsho, told Plaintiff that he is the boss and that he will decide how the wages will be paid and who will be in the tip pool.

185. On June 18, 2021, Defendant Hamsho fired the Plaintiff because he complained about the illegal wage practices.

186. Firing a Plaintiff for complaining about illegal payroll practices is a violation of NYLL § 215.

187. Defendants' actions were willful.

188. Plaintiff is entitled to damages for $20,000 and other damages for the retaliation of the Defendants.

189. As a result of Defendants unlawful conduct, Defendants are liable to Plaintiff for damages to be determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs and members of the Class, pray for relief as follows:

22

A.      Designation of this action as a collective action on behalf of the members of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

C.      Designation of this action as a class action pursuant to F.R.C.P. 23;

D.      Designation of Plaintiff as Representative of the Class.

E.      An award of damages, lost wages, regular pay, minimum wage, overtime, back pay, spread of hours, and tips, according to proof, including liquidated damages, to be paid by Defendants.

F.      Penalties available under applicable laws.

G.      A civil penalty under § 198(1-b) of $5,000 or in an amount to be determined at trial;

H.      A civil penalty under § 198(1-d) of $5,000 or in an amount to be determined at trial.

I.      A civil penalty under § 215 of $20,000 or in an amount to be determined at trial.

J.      Pre-judgment and post-judgment interest.

K.      Attorneys' fees and costs, including fees pursuant to 29 U.S.C. § 216, NYLL § 663, and other applicable laws; and

L.      Such other further legal and equitable relief as this Court deems necessary, just and proper.

## **DEMAND FOR JURY TRIAL**

A jury trial is requested on all claims alleged herein.

Dated: New York, NY

July 26, 2021

/s/ Jeffrey E. Goldman

By:_____

Jeffrey E. Goldman, Esq.
THE LAW OFFICES OF JEFFREY E. GOLDMAN
501 Fifth Ave., Suite 1900
New York, NY  10017
T: 212-983-8999
F: 646-693-2289

*Attorney for Plaintiff, proposed FLSA Collective
Members, and proposed Class*